UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| JACK M. EDWARDS | * | DOCKET NO.  06-0790 |
| VERSUS | * | JUDGE JAMES |
| LINDA S. MCMAHON, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

### REPORT & RECOMMENDATION

Before the court is claimant's petition for review of the Commissioner of Social Security's denial of his application for Disability Insurance Benefits.  The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).   For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

In June 1993, Jack M. Edwards filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Insurance ("SSI") payments.  (Tr. 14).  The applications were denied initially and not further appealed.  *Id*.  Edwards filed subsequent applications in March 1994.  *Id*.  His DIB claim was denied because his insured status expired on September 30, 1992.  *Id*.  His SSI claim was denied, and not further appealed.  *Id*.  In January 1995, Edwards filed a third application for DIB, which was denied on technical grounds, and not further appealed.  *Id*.

On April 26, 1995, Edwards protectively filed another application for SSI.  (Tr. 427).  On May 17, 1995, he filed the current application for DIB.  *Id*.  Edwards alleged disability since August 27, 1991, due to intestinal problems, his lungs, pulmonary fibrosis, chemical poisoning of

his blood, nerve system damage, inability to sleep, and liver damage. *Id*. The claims were denied at the initial stage(s) of the administrative process. *Id*. Thereafter, Edwards requested, and received a February 23, 1999, hearing before an Administrative Law Judge ("ALJ"). (Tr. 27-52, 460-485, 495-517). However, in a March 17, 1999, decision, the ALJ determined that Edwards was not disabled under the Act. (Tr. 11-24). Edwards appealed the adverse decision to the Appeals Council. (Tr. 428). On April 8, 2002, the Appeals Council declined to review the DIB claim, but vacated and remanded the SSI claim to an ALJ for further proceedings. (Tr. 7-10). Following a September 12, 2002, hearing, an ALJ awarded SSI benefits to Edwards, finding him disabled as of March 17, 1997. (Tr. 428).[1]

      Meanwhile, Edwards appealed the denial of his May 17, 1995, DIB application to this court. On February 20, 2004, pursuant to the Commissioner's motion, the matter was remanded for further administrative proceedings in accordance with the fourth sentence of 42 U.S.C. § 405(g). (Tr. 275). On March 16, 2004, the Appeals Council remanded the case to an ALJ to consider the impact and severity of Edwards' obesity. (Tr. 491-492). A hearing was held before an ALJ on January 12, 2005. (Tr. 518-545). However, in a February 16, 2005, written decision, the ALJ determined that Edwards was not disabled under the Act, finding at Step Five of the sequential evaluation process that he retained the residual functional capacity to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 424-436). Edwards appealed the adverse decision to the Appeals Council. On March 11, 2006, the Appeals Council denied Edwards' request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 401-403).

---

[1] Edwards had filed another SSI claim on February 27, 2002. (Tr. 428). He was awarded disability benefits effective February 1, 2002. *Id*.

On May 8, 2006, Edwards sought review before this court. He alleges the following errors:

(1) the ALJ failed to comply with 20 C.F.R. § 404.1527 and SSR 96-7p before finding plaintiff's allegations not totally credible; and

(2) the ALJ erred in failing to attach any weight to the information and opinions provided by Dr. Peacock.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).   Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3)   An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## **Analysis**

As an initial matter, the court emphasizes that the relevant period in this matter extends from August 27, 1991 (the alleged onset date), until September 30, 1992 (date last insured). (Tr. 427-428). Regarding this time period, the ALJ determined at Step Two of the sequential evaluation process that Edwards suffered from severe impairments of obesity and history of bronchitis. (Tr. 432, 435). However, the ALJ concluded that the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id*. The ALJ then determined that Edwards retained a residual functional capacity for a full range of medium work, reduced by the need to avoid concentrated exposure to dust, fumes, or other pulmonary irritants. (Tr. 433,

435).[2]

The ALJ found that Edwards' allegations regarding his limitations were not totally credible. (Tr. 435). Plaintiff contends that in making his credibility determination, the ALJ failed to comply with the requirements of 20 C.F.R. § 404.1529 and SSR 96-7p. When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p. The ALJ is also obligated to consider inconsistencies in the evidence and conflicts between the claimant's

---

[2] Medium work is defined and explained by Social Security Ruling 83-10. It provides:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10

statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). Yet, the ALJ need not follow formalistic rules in his credibility assessment, especially when, as here, the claimant's testimony focused upon his symptoms as they existed some 13-14 years earlier. *See, Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Moreover, plaintiff has not demonstrated any resulting prejudice. *See, Clary v. Barnhart*, 2007 WL 201145 (5th Cir. 1/24/07); *Hillman v. Barnhart*, 170 Fed. Appx. 909, 913 (5th Cir. Tex. 3/20/06)(remand not warranted given lack of objective medical evidence to support allegations).[3] Rather, plaintiff's own testimony and the medical record substantially support the ALJ's credibility determination:

Plaintiff testified that he last worked on August 27, 1991. (Tr. 30, 527). However, he did not leave his job because of a disabling condition. (Tr. 30-31). Instead, he was discharged for fighting. *Id*. When asked in the most recent hearing how long he could have kept working if he had not been discharged, Edwards replied that he did not know, but stated that he had been feeling sick. (Tr. 542). Edwards previously testified that he first felt that he could no longer work sometime in 1992. (Tr. 32). Edwards later estimated that by March 1992, he was no longer physically able to perform any kind of work. (Tr. 44). Nonetheless, Edwards held himself out as ready, willing, and able to perform work by continuing to collect unemployment benefits through April 1992. (*See*, Tr. 31, 44). Edwards acknowledged that no doctor treated him from 1992 until 1994. (Tr. 44).

In an October 28, 1991, letter, Warren Daniel, M.D., stated that he had seen Edwards the previous month. (Tr. 396). Dr. Daniel noted that physical examination revealed moderate

---

[3] In support of his argument, plaintiff cites *Moore v. Social Security Administration*, Civil Action Number 05-0696 (W.D. La. 6/16/06). However, in *Moore*, the ALJ neglected to address a specific impairment identified by the claimant that would have changed the outcome of the disability determination. *Id*. Such circumstances do not exist here.

7

obesity and sinusitis, but was otherwise unremarkable. *Id*. A chest x-ray was clear. *Id*.

On October 3, 1991, Edwards was seen by Lee Roy Joyner, M.D., with complaints of difficulty breathing and some chest pain. (Tr. 62-64). Edwards was a smoker. *Id*. His chest x-ray was normal. *Id*. Sinus x-rays showed slight mucosal thickening of the left maxillary sinus. *Id*. Joyner diagnosed acute bronchitis. *Id*. However, he could not find any other abnormalities. *Id*. His evaluation was normal except for the bronchitis. *Id*.

Dr. Joyner's notes from October 21, 1991, indicate that Edwards was breathing better, and no longer had any wheezing. (Tr. 53). The Pulmonary Lab uncovered a mild restrictive component. *Id*. The findings were consistent with mild interstitial lung injury. *Id*. He had no infiltrates on x-ray. *Id*. His left maxillary sinusitis had improved some. *Id*. Sinus x-rays showed acute maxillary sinusitis. *Id*. Joyner recommended pulmonary function tests at two to three month intervals. *Id*.

On March 12, 1992, Edwards was seen by Robert F. Sarama, M.D. (Tr. 380-381). Edwards complained of a productive cough, increased shortness of breath, and epigastric or right-sided pain (that was non-debilitating). *Id*. Edwards denied any nausea or vomiting. *Id*. He also denied any history of diarrhea, melena (blood-stained stool or vomit), hematemesis (bloody vomit), or hematochezia (bright red blood in stool). *Id*. Dr. Sarama diagnosed acute bronchitis. *Id*. Edwards was referred to a toxicologist. *Id*.[4]

On October 1, 1992, Edwards was diagnosed with mild sleep apnea and being overweight. (Tr. 361). No return appointment was necessary. *Id*.

An outpatient clinic record from April 1, 1993, reveals that Edwards complained of

---

[4] On September 14, 1992, Edwards called Dr. Sarama and said that he needed a letter stating that his problems were due to exposure. (Tr. 379).

8

chronic shortness of breath, particularly upon exertion. (Tr. 71). He denied having a cough. *Id*. He stated that his condition had not significantly changed. *Id*. Testing confirmed mild obstructive sleep apnea. *Id*. Edwards reported occasional alternation between diarrhea and constipation. *Id*. He *recently* noted some bright red blood with his bowel movements. *Id*. (emphasis added). Pulmonary function studies revealed normal pulmonary function with normal lung volume and normal flow rates and normal diffusing capacity. *Id*. These findings were essentially unchanged from a year earlier. *Id*. He was diagnosed with morbid obesity, and related dyspnea. *Id*. The examiner opined that Edwards did not have significant occupational lung disease. *Id*.

The court is well aware that the administrative record contains post-1993 diagnoses and symptoms with resulting limitations that are arguably inconsistent with the ALJ's residual functional capacity assessment.[5] Although a retrospective opinion may be used to establish the existence of a disability, the retrospective opinion must refer clearly to the relevant period of disability and not simply express an opinion as to the claimant's current status. *McLendon v. Barnhart*, 184 Fed. Appx. 430, 432 (5th Cir. 6/9/06). Dr. Callendar stated that Edwards' limitations had been present since his first visit in February 2004. (Tr. 314). He further opined that Edwards' impairments stemmed from exposure to toxic chemicals with his last employer. Yet, Dr. Callendar acknowledged that Edwards' condition was not constant from year to year. (*See*, Tr. 344). Moreover, other post-eligibility medical records were essentially benign. (*See*,

---

[5] For example, on April 11, 1994, Thomas J. Callender, M.D., wrote a letter opining that Edwards suffered morbid obesity, restrictive lung disease secondary to interstitial fibrosis, probable diffuse brain and peripheral nerve damage, and chronic disease of the upper airways. (Tr. 268-270, *see also*, Tr. 314). On August 17, 1994, Maria Palmer, M.D., diagnosed Edwards with toxic encephalopathy and polyneuropathy. (Tr. 77-79). In contrast, testing from February-March 1997, by Ronald Goebel, a clinical neuro-psychologist, indicated that if Edwards had sustained any brain damage, it was mild. (Tr. 288).

Tr. 71, 88-90).[6]  The ALJ, of course, "is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)(citation omitted).

In sum, the evidence from the relevant time period remains of paramount significance. Edwards stated that he felt like he could no longer work beginning in March 1992. Yet, no doctor treated him from 1992 until 1994, and no doctor limited his activity until 1994. (Tr. 33, 44). During 1992, Edwards suffered impairments of acute bronchitis and mild sleep apnea. (Tr. 380, 361). A non-examining agency physician, Hollis Rogers, M.D., completed a residual physical functional capacity form that was consistent with the ALJ's determination. (Tr. 272-279).

Plaintiff contends that the ALJ erred in failing to credit the contemporaneous notes and retrospective opinion by naturopath biochemist, Milton O. Peacock.[7]  His notes from March 11, 1992, indicate that Edwards complained of coughing, passing bright red blood, nausea, gagging, sickness, and daily pain under the ribs. (Tr. 86). However, the very next day, Edwards told Dr. Sarama that his right-sided pain was non-debilitating, and denied any history of nausea,

---

[6] On July 5, 1995, plaintiff was examined at Sterlington Hospital by Narendra Kutnikar, M.D. (Tr. 88-90). Within three to six months after starting work at his last place of employment, he began to experience nausea, vomiting, diarrhea, and insomnia. *Id*. For a brief period, he complained of breathing problems. *Id*. He continued to have diarrhea three to four times per day. *Id*. There was no history of bright red blood. *Id*. Occasionally, he reported some reddish tinge and wondered if it was blood. *Id*. He experienced associated abdominal cramps. *Id*. He reported nausea and vomiting two to three times per week, but mostly nausea. *Id*. Chest x-rays revealed normal size heart and clear lungs. *Id*. Dr. Kutnikar diagnosed hypertension, morbid obesity, and unexplained symptoms of nausea, vomiting, and diarrhea. *Id*.

[7] Although not an "acceptable source" under the regulations, evidence from sources such as naturopaths and chiropractors may be used to establish the severity of an impairment and its effects upon the claimant's ability to work. 20 C.F.R. § 404.1513(d).

vomiting, or bright red blood in the stool.  (*See*, Tr. 380-381).  These inconsistencies undermine Edwards' credibility and the significance of Peacock's notes.

Plaintiff further emphasizes Peacock's July 26, 1993, statement that Edwards had sustained permanent damage to his body, and that he was unable to work responsibly at any task. *Id*. (Tr. 85).  Aside from the fact that the statement is outside the relevant period, a physician's statement that a claimant is "disabled" or "unable to work" is not a medical opinion, and is not afforded any special significance.  20 C.F.R. § 404.1527(e); *see also, Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).  Moreover, Peacock's assessment relied upon Edwards' description of his symptoms which has proven to be less than completely consistent at times.

For the foregoing reasons, the undersigned finds that the ALJ's residual functional capacity assessment and associated credibility determinations are supported by substantial evidence and are free of legal error.[8]  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

---

[8] Plaintiff has not alleged any errors in the remaining steps of the sequential evaluation process.

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 12th day of February, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE